UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF NORTH CAROLINA
GREENSBORO DIVISION

IN RE:                          )
                                )
TAMMY FURR ANDERSON,            )      Case No. 03-13586C-7G
                                )
            Debtor.             )
_____ )
                                )
CHARLES M. IVEY, III, the       )
Chapter 7 Trustee for TAMMY     )
FURR ANDERSON,                  )
                                )
            Plaintiff,          )
                                )
      v.                        )      Adversary No. 04-2070
                                )
TAMMY FURR ANDERSON,            )
                                )
            Defendant.          )
                                )

<u>MEMORANDUM OPINION</u>

Charles M. Ivey, III, the Chapter 7 trustee ("Trustee"), filed a motion for summary judgment on his adversary complaint to deny Tammy Furr Anderson (the "Debtor") a discharge on several grounds. One of those grounds is 11 U.S.C. § 727(a)(3), which requires the Trustee to either prove that the Debtor concealed, or failed to keep or preserve recorded information, from which the Debtor's financial condition or business transactions might be ascertained. A second ground is section 727(a)(4)(A), which requires the Trustee to prove that the Debtor knowingly and fraudulently made a false oath or account in connection with her bankruptcy case.

The court held a hearing on the Trustee's motion on January 3, 2006, at which time the court took the matter under advisement.

For the reasons stated herein, the court will grant the Trustee's motion on both grounds and will deny the Debtor a discharge.

## STANDARD OF REVIEW

Summary judgment is appropriate when the matters presented to the court "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Fed. R. Bankr. P. 7056; Celotex v. Catrett, 477 U.S. 317, 322 (1986). The party moving for summary judgment has the initial burden of proving that there is no genuine issue as to any material fact. Adickes v. S. H. Kress & Co., 398 U.S. 144, 161 (1970). Once the moving party has met this initial burden of proof, the non-moving party must set forth specific facts sufficient to raise a genuine issue for trial, and may not rest on its pleadings or mere assertions of disputed facts to defeat the motion. Matsushita Electric Industrial Co., Ltd., v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (stating that the party opposing the motion "must do more than simply show that there is some metaphysical doubt as to the material facts"). The mere existence of a scintilla of evidence in support of the opposing party's position will not be sufficient to forestall summary judgment, but "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 252 (1986). In ruling on a motion for summary

judgment, "the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor."  Id. at 255.

BACKGROUND

In 1995, the Debtor purchased a 61% ownership interest in Sidney Arthur, Inc. ("Sidney Arthur"), which produced hand painted furniture in High Point, North Carolina.  The Debtor operated the business as her own instrumentality.  The company was once profitable, but by 2002, faced with stiff competition from imported painted furniture knockoffs, Sidney Arthur's business had declined. Before Sidney Arthur ceased operations, however, the Debtor assisted in attempting to market and sell the company.  The Debtor spoke with a prospective purchaser about continuing her management of the company at the October 2002 International Home Furnishings Market in High Point, North Carolina; however, that negotiation fell through and the Debtor contacted her attorney to close the business.

By December 2002, Sidney Arthur had ceased operations, but no formal dissolution ever occurred.  In November of 2002, Sidney Arthur's balance sheet indicated that it had current assets totaling $359,000 and another $69,000 in property and equipment. First Charter Bank ("First Charter") had a secured lien on Sidney Arthur's assets to secure indebtedness of $221,000.  The Debtor testified, however, that Sidney Arthur's value was much less that what was stated on its balance sheet.  For example, the Debtor

-3-

explained that Sidney Arthur's inventory – valued at $199,000 – was only determined once per year, and in November 2002, the actual value of the inventory was more accurately in the $2,000 to $20,000 dollar range.[1]   In her opinion, the total liquidation value of Sidney Arthur in November 2002 was in the $10,000 to $50,000 range.

By December 2002, whatever assets remained at Sidney Arthur were allegedly liquidated and paid to creditors.   First Charter, whose lien was not satisfied by the liquidation of Sidney Arthur, visited the premises in March 2003, but did not find any items of value.

After First Charter sold the Debtor's home in Archdale, North Carolina at foreclosure in partial satisfaction of the Debtor's business debt to it, the Debtor moved to leased property in Oak Island, North Carolina.   The Debtor's new residence is much smaller than her old home, and the Debtor leases a trailer to store her personal belongings.   The lease of that trailer is not listed on the Debtor's original or amended schedules.   The Debtor also held joint bank accounts with her mother and daughter.   Those joint accounts were not disclosed on the Debtor's original or amended schedules.

The Debtor argued in opposition to the Trustee's motion for summary judgment that she was not really involved in the business

---

[1] The Debtor testified that Sidney Arthur stopped purchasing inventory in 2002 as a cost-savings measure and hired cabinet makers to produce what was needed to fill customer orders.

-4-

affairs of Sidney Arthur during the 2002 calendar year.  In part, her absence was due to her separation from Eddie Ray Anderson, her former spouse.  In connection with her dissolution of marriage proceeding, the Debtor completed sworn answers to a set of interrogatories in December 2002.  Interrogatory number 22 asked the Debtor to list "all household goods . . . furniture, jewelry . . . in which you  claim an interest [and y]our interest in each." In response, the Debtor stated, that, among other items, she had a 100% interest in a woman's engagement diamond ring, woman's wedding band, anniversary ring, and tennis bracelet.  In her original bankruptcy schedules, however, the Debtor claimed to only own jewelry having a current market value of $50.00.  When the Trustee inquired about her ownership of the items of jewelry listed in her answer to the interrogatory, the Debtor responded that she had gifted the items to her mother or daughter in the early part of 2002 – long before she had signed the interrogatories stating that she had a 100% ownership interest in those items.

ANALYSIS

The Trustee objects to the entry of a discharge for the Debtor on several grounds.  As more fully discussed herein, the court finds that the Trustee presented sufficient uncontroverted evidence to deny the Debtor a discharge on at least two of those grounds – sections 727(a)(3) and (a)(4) of the Bankruptcy Code.

A. Section 727(a)(3)

-5-

Section 727(a)(3) of the Bankruptcy Code prohibits a debtor from receiving a discharge if a debtor has either concealed or has not kept or preserved written records from which the debtor's financial condition or business transactions might be ascertained.[2] 11 U.S.C. § 727(a)(3).  A debtor engages in "passive concealment" when the debtor maintains silence at a time when the debtor has a duty to speak, as for example, when the a debtor does not disclose assets on the petition and schedules.  See Black's Law Dictionary 307 (8th ed. rev. 2004); c.f., Damon v. Chadwick (In re Chadwick), No. 05-592, 2005 U.S. Dist. LEXIS 32734 at *15 (W.D. Wis. Dec. 13, 2005) ("[I]ntent is an element of concealment.").

With regard to the duty to keep or preserve recorded information, unlike other subsections of 727(a), the movant "need not prove a fraudulent intent, but only that the debtor unreasonably failed to maintain sufficient records to adequately ascertain his financial situation." Razzaboni v. Schifano (In re Schifano), 378 F.3d 60, 70 (1st Cir. 2004).  The purpose of section

_____

[2] That section provides
(a) The court shall grant the debtor a discharge, unless--
                    . . . .
    (3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case . . . .
11 U.S.C. § 727(a)(3).

-6-

727(a)(3) is to ensure that interested parties have complete and accurate information regarding the debtor's affairs that is sufficient to trace the debtor's financial history. <u>Meridian Bank v. Alten</u>, 958 F.2d 1226, 1230 (3d Cir. 1992). <u>See also</u> <u>Transworld, Inc. v. Volpe (In re Volpe)</u>, 317 B.R. 684, 690 (Bankr. D.S.C. 2003) ("Written information is required such that there are 'accurate signposts on the trail showing what property passed through the debtor's hands during the period prior to his bankruptcy.'") (citation omitted). Section 727(a)(3) "places an affirmative duty on the debtor to create books and records accurately documenting his business affairs." <u>Peterson v. Scott (In re Scott)</u>, 172 F.3d 959, 969 (7th Cir. 1999). No standard test for sufficient record keeping exists; rather:

> The Bankruptcy Code does not require a debtor seeking a discharge specifically to maintain a bank account, nor does it require an impeccable system of bookkeeping. Nevertheless, the records must "'sufficiently identify the transactions [so] that intelligent inquiry can be made of them.' The test is whether 'there [is] available written evidence made and preserved from which the present financial condition of the bankrupt, and his business transactions for a reasonable period in the past may be ascertained.'"

<u>Id.</u> (citations omitted).

"The 'fresh start' aim of Chapter 7 must be balanced against the goal of § 727(a)(3) of providing adequate information regarding debtor's financial status." <u>DeMassa, APC v. MacIntyre (In re MacIntyre)</u>, No. 95-55617, 1996 U.S. App. LEXIS 6518 at *11 (9th Cir. March 6, 1996) (unpub.). The burden is on the moving party to

-7-

prove that the debtor "failed to keep or preserve financial records and that this failure prevented him from ascertaining her financial condition." Robertson v. Dennis (In re Dennis), 330 F.3d 696, 703 (5th Cir. 2003). See also Fed. R. Bankr P. 4005 ("At the trial on a complaint objection to a discharge, the plaintiff has the burden of proving the objection."). Once that threshold is met, then the burden then shifts to the debtor to prove that the inadequacy is justified. Dennis, 330 F.3d at 703.

In this case, the Trustee carried his burden of proof in demonstrating that the Debtor either concealed or failed to keep or preserve sufficient records from which the Debtor's financial conditions or business transaction might be ascertained.

Because the Debtor is the president and controlling stockholder of Sidney Arthur, and because the Debtor admitted to using Sidney Arthur as her own instrumentality, the Trustee is entitled to the business records of the company to ascertain what assets it had, the value of those assets, to whom the value of the assets were paid, and what actions, if any, are appropriate to recover transferred assets. Likewise, without the records the Trustee cannot properly analyze whether the Debtor has any causes of action against the other principals of Sidney Arthur or against the entities or individual that did business with it. Moreover, the Trustee located a balance sheet prepared shortly before Sidney Arthur closed that showed assets of about $428,000. First Charter

was owed about $221,000; thus, the Debtor's shares of stock may have had some value.  Even if the stock had no value, the November 2002 balance sheet listed the Debtor as having loaned Sidney Arthur about $180,000 and the Trustee is entitled to the business records of the company to determine whether the Debtor could realize anything on her creditor claims.  In short, without these business records, the Trustee cannot properly perform his obligation to investigate the financial affairs of the Debtor and to collect and reduce to money the property of the estate.  11 U.S.C. § 704.

The Debtor did keep or preserve some recorded information regarding the business affairs of Sidney Arthur.  The Debtor's attorney is storing 12 boxes of business records.  The Trustee has spent two days sifting through those records.  However, the Trustee is "not required 'to sift through documents and attempt to reconstruct the flow of the debtor's assets.'"  Scott, 172 F.3d at 969 (stating that the trustee was not required to sift through 435 boxes of the debtor's records and document the maze of transaction) (citation omitted).  Moreover, even after sifting though the records of Sidney Arthur, all the Trustee was able to come up with was a November 2002 balance sheet showing that Sidney Arthur had assets of $428,000 – the Debtor claims that the balance sheet is grossly inaccurate and that Sidney Arthur's assets were actually valued between $10,000 and $50,000.  The Debtor, however, did not offer any recorded information to substantiate that allegation.

-9-

Not only has the Trustee been thwarted in his attempts to obtain recorded information regarding the financial affairs and business transactions of Sidney Arthur, he has also been thwarted by the Debtor's defiance and professed ignorance. For example, the Debtor stated in response to the Trustee's interrogatories that she was "not obligated in any way to account to anyone for the disposition of [Sidney Arthur's] assets." Likewise, in her Rule 2004 examination, she stated:

> Q: My question is simple, what happened to all these assets that are listed on this balance sheet?
>
> A: They were, I guess, sold at the sale.
>                             . . . .
> Q: So your testimony today, then, is that the values on this balance sheet showing current assets of three hundred and fifty nine thousand . . . is that you don't have [any] idea where these assets went and where the proceeds of the sale of the assets went?
>
> A: That is correct. . . .
>                             . . . .
> Q: Do you know what has happened to the accounts receivable that are listed on here. . . almost forty-seven thousand dollars?
>
> A: I don't.

(Ex. E, pp. 39-41).

Although the Debtor disputes the accuracy of the November 2002 balance sheet, it was prepared at a time when the Debtor was involved in the management of Sidney Arthur and just after negotiations with a potential purchaser of the company had failed. Particularly peculiar is that despite her controlling stock

-10-

interest and her hefty investment of money and time into the company, the Debtor was not able to produce any marketing materials or the names of any potential purchasers from whom those materials might be acquired.

Rhonda Wylie was the individual to whom the Debtor had delegated the day to day management of Sidney Arthur in the year before it ceased operations. Ms. Wylie stated the primary focus of Sidney Arthur after November 2001 was to sell inventory and equipment to create operating funds. In November or December 2002, a sale was held in which the remaining assets were liquidated. By the time the secured creditor came to inspect the remaining collateral in March 2003, nothing of substantial value remained. Ms. Wylie's affidavit, however, is insufficient to ameliorate the lack of recorded information from which the business transactions or the financial affairs of Sidney Arthur might be ascertained.

In total, the Trustee has spent approximately 25 months attempting to ascertain the precise nature and disposition of Sidney Arthur's assets, the Debtor's interest in them, and any causes of action that the Debtor might have arising out of the closing of the business and the application of funds to creditors. The Trustee is entitled to those records and should not "be required to engage in a laborious tug-of-war to drag the simple truth into the glare of daylight." Boroff v. Tully (In re Tully), 818 F.2d 106, 110 (1st Cir. 1987).

-11-

In addition to the lack of sufficient records from Sidney Arthur from which to ascertain the Debtor's financial condition, the Trustee also alleges that the Debtor concealed other financial information.  For example, the Debtor stated that she leases a trailer; however, neither the trailer nor the lease is listed on the Debtor's schedules.  Had the lease been disclosed, the Trustee could have investigated the contents of the trailer or elected to assume and assign the lease in an attempt to create estate funds.

Also, the Debtor failed to disclose two bank accounts that she shares with her mother and daughter.  A presumption exists under North Carolina law that all the funds in a joint bank account belong to the debtor.  E.g., Jimenez v. Brown, 509 S.E.2d 241, 246 (N.C. Ct. App. 1998) ("As a joint account, either party may terminate the account or withdraw all funds from the account. . . . '[T]here is a presumption that all of the joint bank account is owned by the debtor . . .' and that the depositors have the burden to prove that ownership of the funds is otherwise."), review denied, 533 S.E.2d (N.C. 1999).  Because the Debtor has an interest in the joint accounts, so too does the Trustee.  11 U.S.C. § 541(a); 704(1).  Had the joint accounts been disclosed, the Trustee might have elected to administer the funds in those accounts for the benefit of the estate.

Based on these undisputed facts, the Trustee has carried his burden to demonstrate that the Debtor has either concealed or

failed to keep or preserve business records from which the Debtor's financial condition or business transactions might be adequately ascertained.  The burden now shifts to the Debtor to prove that the lack of business records is justified under all the circumstances of the case.  "'Justification for [a] bankrupt's failure to keep or preserve books or records will depend on . . . whether others in like circumstances would ordinarily keep them.'"  Lansdowne v. Cox (In re Cox), 41 F.3d 1294, 1299 (9th Cir. 1994) (citation omitted).  "'Vague and indefinite explanations of losses that are based upon estimates uncorroborated by documentation are unsatisfactory.'"  Alten, 958 F.2d at 1233 (citation omitted).

The Debtor is the president of a company that was once profitable and which – at one time – had some 30 employees.  The Debtor has experience in directing, managing, and operating a business.  The Debtor was also involved in the negotiations to sell Sidney Arthur in October 2002 – shortly before the company ceased operations.  Others in like circumstances would keep and preserve the business records of the company that they own, operate, and control.  See, e.g., Goff v. Russell Co., 495 F.2d 199, 201-02 (5th Cir. 1974) ("Obviously an unsophisticated wage earner dealing primarily in cash should not be denied a discharge because he failed to keep books of account.  A higher standard of care is required, however, for a merchant actively engaged in credit transactions.").  Likewise, others in like circumstances as the

Debtor would not have concealed the existence of joint bank accounts and a lease from the Trustee and creditors of the estate by electing not to include that information on the bankruptcy schedules.

The Debtor attempts to excuse her failure to keep or preserve business records and her concealment of property of the estate by stating that she suffered a total mental, physical, and emotional breakdown following her separation from her former spouse.  That separation occurred about one-year before Sidney Arthur ceased its operations.  The Debtor stated that she left the affairs of Sidney Arthur in the hands of others and was not involved in the day to day management of the company during its last year of operation. The fact that the Debtor might have delegated the responsibility to maintain books and records, however, does not excuse the lack of adequate financial information.  In short, the Debtor has not offered anything other than vague and indefinite explanations of Sidney Arthur's loss of assets and has not offered any adequate corroborating documentation to show that the company's own business records are grossly inaccurate.

The Debtor further attempts to justify her concealment of the joint bank accounts by explaining that none of the funds in those accounts were attributable to her income.  According to the Debtor, her name is on the account solely as a matter of convenience and she does not consider any of the money to be hers.  The Debtor's

-14-

legal entitlement to the funds in those joint bank accounts, however, is a determination for the Trustee to make – not the Debtor.  The Debtor's concealment of those joint bank accounts is inexcusable under the circumstances of this case, especially considering the amount of money that flowed from her mother's bank account into her personal bank account.

In sum, the totality of the circumstances in this case convinces the court that the Debtor either concealed or failed to keep or preserve adequate recorded information from which the Debtor's financial affairs or business transactions might be ascertained.  The Debtor has failed to offer sufficient justification excusing the absence of adequate recorded information.  Therefore, the court will grant the Trustee's motion for summary judgment and deny the Debtor a discharge pursuant to section 727(a)(3).

B. Section 727(a)(4)

In the alternative, and as an additional ground, The Trustee argues that the Debtor should be denied a discharge under section 727(a)(4)(A) of the Bankruptcy Code.  That section provides:

> (a) The court shall grant the debtor a discharge, unless--
>                 . . .
> > (4) the debtor knowingly and fraudulently, in or in connection with the case--
> > > (A) made a false oath or account . . . .

§ 727(a)(4)(A).

"[T]o deny a debtor discharge under this section, a plaintiff

-15-

must prove by a preponderance of the evidence that: 1) the debtor made a statement under oath; 2) the statement was false; 3) the debtor knew the statement was false; 4) the debtor made the statement with fraudulent intent; and 5) the statement related materially to the bankruptcy case." Keeney v. Smith (In re Keeney), 227 F.3d 679, 685 (6th Cir. 2000). The party objecting to discharge has the burden of proof by a preponderance of the evidence. Fed. R. Bankr. P. 4005.

Bankruptcy relies heavily on self-reporting by debtors. A debtor's signature avowing to the truth and correctness of the bankruptcy petition, schedules of assets and liabilities, and statement of financial affairs is undertaken on penalty of perjury. Fed. R. Bankr. P. 1008 ("All petitions, lists, schedules, statements and amendments thereto shall be verified or contain an unsworn declaration as provided in 28 U.S.C. § 1746."). Truth in reporting is consonant with the purposes of bankruptcy, which is to "give[] the honest but unfortunate debtor . . . a new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of pre-existing debt." Local Loan Co. v. Hunt, 292 U.S. 234, 244 (1934); In re Jarrell, 189 B.R. 374, 377 (Bankr. M.D.N.C. 1995) (stating that bankruptcy does not afford a debtor a right to a "head start"). A debtor should make every attempt to report accurate information in the debtor's petition and schedules and "[n]either the trustee nor the creditors should be

required to engage in a laborious tug-of-war to drag the simple truth into the glare of daylight." Tully, 818 F.2d at 110. See also In re Ingle, 70 B.R. 979, 983 (Bankr. E.D.N.C. 1987) ("Creditors are entitled to truthful statements in a debtor's statement of financial affairs so that they may conduct their own investigations of those affairs.").

Of course, petitions, schedules, and statements are often filed hastily, memories fail, and innocent mistakes and omissions can occur. E.g., Jordan v. Bren (In re Bren), 303 B.R. 610, 614 (B.A.P. 8th Cir. 2004) ("[C]ourts are often understanding of a single omission or error resulting from innocent mistake."), rev'd on other grounds, 122 Fed. Appx. 285 (8th Cir. 2005). "However, multiple inaccuracies or falsehoods may rise to the level of reckless indifference to the truth, which is the functional equivalent of intent to deceive." Id. See also In re Chavin, 150 F.3d 726, 728 (7th Cir. 1998) ("Chavin concedes as he must that not caring whether some representation is true or false - the state of mind known as 'reckless disregard' - is, at least for purposes of the provisions of the Bankruptcy Code governing discharge, the equivalent of knowing that the representation is false and material."). Likewise, "[t]he recalcitrant debtor may not escape a section 727(a)(4)(A) denial of discharge by asserting that the admittedly omitted or falsely stated information concerned a worthless business relationship or holding; such a defense is

specious." <u>Chalik v. Moorefield (In re Chalik)</u>, 748 F.2d 616, 618
(11th Cir. 1984).  An intent to deceive may be found "where the
debtor, in the first instance of filing a petition, Schedules, and
Statement of Financial Affairs, makes statements therein, exceeding
honest mistake, which are inconsistent and incompatible with her
own knowledge and information." <u>Kaler v. McLaren (In re McLaren)</u>,
236 B.R. 882, 885 (Bankr. N.D. 1999).

The court has already detailed several items that the Debtor
concealed in her schedules – her failure to disclose her lease of
a trailer, and joint bank accounts that she held with her mother
and daughter.  The most glaring falsehood, however, is the Debtor's
about face on her ownership interest in personal items such as her
engagement ring, anniversary ring, wedding ring, and her tennis
bracelet.  The Debtor swore under oath in December 2002 that she
had a 100% ownership interest in those items; however, the Debtor's
later sworn testimony is that she gifted those items to either her
mother or daughter about a year earlier.  In response to the
Trustee's allegation that the Debtor knowingly and fraudulently
made a false oath or account, the Debtor states:

> [T]he Trustee attempts to mislead the Court into
> believing that December 23, 2002, the date on which the
> [answer to interrogatory number 22] was executed . . . is
> determinative of all issues. This is incorrect . . . .
> Just because a pleading is dated on a certain date does
> not mean that all events described in that pleading
> occurred on that date. . . .  The Trustee is advancing
> the argument that since the pleading was signed by the
> Defendant . . . on the 23rd day of December, 2002, that
> on that date the Defendant owned, had title to and actual

-18-

possession of the personal property described therein.
That is not what is reported . . . .   Rather, the
Defendant is offering her opinion and describing what she
believes to be marital assets, the title to those assets
and who has possession of them.  No determinative date is
given.  While it is accurate that during their marriage,
the Defendant did have ownership, title and possession of
certain items of personal property, she did in fact give
a portion of that personal property to both her daughter,
Brandi, and her mother, Opal.

(Document No. 32, p.4).

Interrogatory number 22, however, did not ask about items in
which the Debtor had an interest during the marriage; rather it
asks the Debtor to state – in the present tense – all property in
which she claims an interest.  The Debtor cannot both have a 100%
ownership interest in the property for purposes of a state court
dissolution of marriage proceeding, and then not have any interest
in those items for purposes of a later filed bankruptcy.  Any
argument to the contrary is entirely specious.  If the Debtor had
transferred the items after answering the interrogatory in December
2002, then she was required to disclose that transfer on her
Statement of Financial Affairs.  The Court can discern no reason
for disclaiming ownership of certain items of personal property –
that the Debtor swore she owned less than a year earlier – other
than to knowingly and fraudulently conceal those assets, or the
transfer of those assets, from the Trustee.  The Trustee is
entitled to ascertain the value of those items and determine
whether the items are worth administering for the benefit of the
Debtor's creditors.  For this reason, the Court will also deny the

-19-

Debtor a discharge under section 727(a)(4) as an additional and alternative basis.

CONCLUSION

The Trustee has shown undisputed facts which establish that the Debtor has concealed assets, failed to keep or preserve adequate recorded information from which her financial affairs and business transactions might be ascertained, and has knowingly and fraudulently made false oaths and accounts in connection with her bankruptcy case.  Therefore, the court will deny entry of a discharge for the Debtor.

A separate order will be entered pursuant to Fed. R. Bankr. P. 9021.

A copy of the foregoing was mailed
electronically or conventionally to

Charles M. Ivey, III

J. Brooks Reitzel, Jr.

John M. Blust
121-B S. Elm St.
P. O. Box 3324
Greensboro, NC 27402